please the court I'm Julie Hall with co-counsel Denise Young for petitioner Aaron Williams I'd like to reserve five minutes of my time for rebuttal and I understand that's my responsibility everything the prosecutor told mr. Williams jury in his closing argument points to this man and to no one else I ask you to consider that it points to no one else the problem of course was that it did only mr. Williams and his defense counsel didn't know it and he was convicted of a murder he didn't commit the district courts denial of relief on mr. Williams claim under Brady vs. Maryland was based on its finding that the exculpatory evidence was immaterial that evidence was disclosed to the defense over six years after it was received by the state and over five years after mr. Williams was tried and convicted that evidence resulted in the discovery of the testimony of two witnesses who saw Patrick Fields with blood on his clothing the night the victim was killed and it consists of Patrick Fields who was in the midst of a spree of attacks on women in the Eloy Casagrande area around the time of the victim's murder and who lied about where he was in the night she was killed that was material evidence it was material because the state's theory based almost exclusively on the testimony of Michelle Delaney was that mr. Williams confessed to her that he and he alone killed the victim withheld evidence gutted Delaney's story the story the state adopted throughout the trial with this evidence the jury's verdict is no longer worthy of confidence and that is all we must show to obtain relief well what do we have in this record that shows what those witnesses would have testified to we have the declaration of miss McKinney who says that she saw Patrick Fields in the park that I think I often call it that night probably more accurately that morning which park not the same park where the car was found that's right your honor was the same park across I'm sorry you're right that it was not the same park there's a park it's at Florence and Shreckle in Casa Grande called Eastland Park it's very near 2nd Street where Milton Barnett describes that he saw Patrick Fields walking that morning but the park is neither the park where the car was found nor where the body was found it's just a park that's correct your honor the park where the car was found is on McMurray Boulevard in Casa Grande which is roughly a half a mile from Eastland Park so walking about 10 minutes between the two parks from the car to the to where miss McKinney and mr. Barnett saw mr. Fields and neither of the witnesses who filed the declarations were that precise in their declarations about exactly it was around the time but exactly the same day is not so plain is that right mr. Barnett does recall the day your honor because he recalls that it was the killed miss McKinney's declaration does say she can't be specific about the exact about the exact date she does remember it was about that time okay so we have their declarations that they saw fields in this park with blood taking bloody clothing and burning it or something and the evidence that led you to those witnesses was the were the letters that's right your honor the Beverly Sweat letters that were sent in 1991 to the Pinal County Sheriff's Office and that was before trial that that's right that was roughly well not quite a year before and though if I just finish it just a minute and that those letters said that she had information that Williams had paid fields to do the killing and I think the parties have agreed in the district court found those letters would not be admissible at trial so they're not actually that evidence is not what say this the wrong way that's not the evidence that really proves the prejudice or really proves the materiality of the Brady claim it's the evidence that those letters allowed us to discover and it would have allowed anybody to discover had they done that investigation at the time because those letters led to Yolanda McKinney and Milton Barnett. Solis, Solis is that his name the the investigator he testified at trial that's right your honor he it's possible the letters could have been used to impeach him I suppose with regard to whether he investigated whether he received those letters and investigated that's true your honor I suppose under the evidence rules it would depend on whether he was asked do you have any other information about other suspects and whether he denied that or not whether those letters would be but had you gone had the defense counsel gotten the letters in advance of that maybe so I that's probably so we have cases that say for Brady material the the evidence must be admissible and then we have other cases that say well or likely to lead to admissible evidence and we've acknowledged that there's a conflict between those cases here the evidence that that is the Brady material the sweat letters are not themselves admissible as you've just said so what do we do about our conflicting case law and is there something as Judge Berzon was suggesting where we could say well they're admissible for impeachment purposes which we've said in some cases as well and say well we don't have to resolve this conflict I think probably both of those positions would be correct because it's it's hard to imagine that Brady would contemplate I don't know of other way this evidence really could have been discovered other than through the letters and so it doesn't seem to make sense to say when you've got this evidence staring you in the face that's begging for investigation and the investigation is going to lead it to that admissible evidence it seems to me the correct answer is it must be disclosed up to the state to decide whether it's going to be admissible or lead to something in this yeah but this is my problem the the letters you say are not admissible in and of themselves okay the letters are inculpatory to the extent that they seem to suggest that there was a link between Fields and Williams but absent the letters there's no tie to this murder there's just the testimony of the witnesses isn't that that this this fellow was in the park the tie is the date that Milton Barnett gives the date as the day before he learned that the victim was dead well there's also I mean when you started investigating when you got the letters you found that but you also found a lot of information about Patrick Fields about his activities around that time and about his relationship to Williams and the fact I gather the inferences that he would have known Rita Dallal because he knew apparently knew Williams quite well and he and also the fact that when he was interviewed he lied about where he was so there was more than simply the there was that this guy was seen but then there was who he was and the fact that he seemed to be covering up where he was but so the real question is is the one that Judge Okuda asked it seems to me which is how far down the line does one go in a Brady claim in terms of what would have been discovered had the and my instinct is like yours but I but I agree that there are statements running around that it has to be admissible and I don't know what that means certainly if if that question has to be addressed I don't think it has to be the question of how far down the line do we have to go you know if you had gotten a letter and then by interviewing along every link in the chain someday eventually you were going to get to exploitatory evidence but that didn't happen in this case the letters had the names of the two witnesses and the the third party who was potentially culpable in the case and so the letter but but still the letters themselves aren't the point it's what you would have found out had you had the letters and it's not simply these two affidavits as I said but also the information about you only had no reason to be looking at fields until you got the letters that's so what was fields I'm sorry I don't I don't know that he had a motive to attack any of the women that he was attacking and threatening and sexually assaulting I think I guess you could say the sexual assaults worry were emotive okay so so you have in addition to his being there at the date you have his assaults of women that's what you know about and was this murder in this similar to the pattern it was in the sense that they were women alone we we don't know all of the facts of what we know the facts up till about just after three o'clock in the morning when the apartment and then there's about a 24 hour period or a little bit longer I'm sorry there's a several hour period until the body is discovered that Sunday morning and so there's maybe five or six hours in between we just don't know where she went who she met and what happened but the women were alone and some of them were bloody attacks I gather pretty violent attacks they seem to have a sexual motive but not all of them from what I could see were actually achieved so to speak so that's right your honor and one difference that there may be and this is pure speculation on my part but from looking at the records we have one difference may be that this victim may have fought back and that there was never an actual evidentiary hearing in this case and I gather you don't particularly want one is that right did you ever turn down an opportunity to to do more investigation to have every chance in the world to prove our case but to be candid with you we think we've proven it we think that and you know that the Brady standard is we don't have to prove mr. Williams is innocent although he is we don't have to prove that he would have been equated at a trial with this evidentiary hearing and what you have this declaration from these declarations from some people and we have no and the judge speculates perhaps improperly that they would have been impeached but we don't know how they would have stood up we have no idea whether if somebody asked them for example how did you know do you really know what date this was and and it just seems extremely uncomfortable even if we were otherwise persuaded that there was at least enough here to get these people on the stand and see if their stories hang together to simply proceed on this basis and I think that the respondents had the opportunity to interview these the district court gave us a several month period in which the respondents could have interviewed I thought the responses ultimately didn't really ask for an evidentiary hearing and they essentially said if you're inclined to grant granted you should have an evidentiary hearing my point is they had that opportunity to take deposition well they want I thought they did take that position with wasn't there an expanded the district court allow an expansion of the record on this claim that's right your honor and the the only piece of evidence that the state submitted during that period of investigation that we had was the record that showed Pat Fields was not in jail at the time the victim was killed the anything else so their opportunity for the evidentiary hearing such as well but they did ask that if the court did they won I mean they why did they have to do any more than to say if you're inclined to grant then we'd like to have a hearing in order to put test these witnesses like I guess you're on it for the same reason that we went ahead and presented our evidence rather than saying if you're inclined to deny it then we want to hearing but you know I think they had their opportunity to rebut any of the evidence that we presented and instead they chose to rely on rather than refuting any of the evidence and I and I just if I can go back to a point that judge Schroeder made about the whether the letters contained inculpatory evidence and and I don't think that we I don't think that we can say that I don't think the because it assumes that we can sort of conduct a hypothetical new trial in our minds and say well if we went back then the state would completely turn their case on its head and suddenly they'd be proving that what happened that morning was that Aaron Williams put put the victim in the car somehow went out located Patrick Fields negotiated a contract for her murder and then Patrick Fields maybe took her you know the state would have to prove all these new things and they also would have had would have not been able to use Michelle Delaunay at that point because she had a completely different story that's right and there's simply no evidence that they could prove that other than if they were going to rely I suppose on the testimony of Patrick Fields that I was paid a thousand dollars looking at this letter and if the elements of the letter are false or of the the about what who said why do we believe anything in the letter if in fact he Patrick Fields doesn't say I I was paid by Aaron Williams to commit the murder and that he makes other misstatements I cut her eyes out which was not supported by the factual evidence so these are all lies so why does it have any weight at all why isn't the rest of the allegations equally suspect I think they are your honor I think it's and this is why it's there's some triple hearsay in there some quadruple hearsay in there maybe some things that are just not reliable but you know so those letters were inadmissible and I cast down on the materiality of these statements then yeah not on their materiality because they did give the names of two witnesses who as we've discussed give evidence direct evidence that someone else may have committed this crime that undermines the confidence and well but only that they saw somebody who was bloody and he made statements which you're saying are not true so so that that's puzzling to me as to why that makes a difference in the case I guess you know I don't know if Patrick Fields made those statements or not you pointed out they don't necessarily match the facts of the crimes Michelle Deloney's much of her testimony critical points of her testimony didn't match the facts of the crime either she said that mr. Williams told her the victim was shot twice she was shot three times mr. Loney never testified that the victim strangled but yet a medical examiner came in during the penalty phase and testified that the victim had been strangled so but her testimony was as to what Aaron Williams had said not as to her knowledge right the crime so that seems different because supposedly Patrick Fields was talking about the well supposedly Aaron Williams had been to according to Michelle Deloney but yet all of her facts weren't correct and and all of all of Miss Beverly sweats facts weren't correct but the point was they they led their investigation led to admissible material evidence but the district court says in a footnote that he wouldn't consider the background information about fields that he didn't consider it because he thought it would be might be in this admissible trial do you take do you what do you say about that it was potentially admissible of course this is this is the reason why we can't hold our hypothetical trial because we don't know what would be we don't necessarily know what would be admissible in Arizona the rule for admission of third-party culpability evidence is a simple relevance test so it's a pretty easy standard that information may have come in as you know sort of a modus operandi type evidence if Patrick Fields were to testify at a new trial and deny that he'd you know ever heard any women or ever threatened anyone then it would come in as a speculative to say whether it would be admitted or not what did solace testify to at the trial about what was the subject matter of his testimony the investigation in general a primary he was he seems to have been the primary contact with Michelle Deloney and the investigation at the scene the murder scene and so but certainly nothing about an alternative so what this kind of evidence have come in in terms again of alternative let's go for the investigation did you know you did you have these letters you just speak to Patrick Hills why'd you know about Patrick Fields did you look into his background did you that's that's worth it okay do you want to touch on the other issue that's been certified I would is also entitled to relief from this violation he's entitled to a new sentencing tell you what my biggest problem with that is and see what you have to say about is that you don't do you have never to this day introduced a declaration from a psychiatrist as to what he would have said where he were he or what he would have told you or what anything to substantiate that a no your honor well it matters in one sense it matters in the sense that this on this claim I think the appropriate relief would be a remand for investigation development and an evidentiary hearing rather why couldn't you have investigated before we asked the district court for resources to investigate this claim in the district court denied it we also requested funds from the state court when we filed the successive post-conviction petition just denied that motion as well the court's position was well I have to first find whether ache was violated and then if I do I say prejudice so all we consider this motion to a spa day when I decide whether the first prong and because the district court didn't find that ache was violated we never got back to getting the resources to investigate so that's what's prevented us from presenting that evidence there's language in the opinion when it's in in the section on sentencing that says so therefore we hold that where the state presents evidence of future dangerousness then the defendant is entitled to a mental health expert why was it unreasonable because we're looking at it under the deference standard why was it unreasonable for a state court to say that wasn't the case here and so therefore the defendant it was not entitled to a mental health expert we have to say that's an unreasonable application even if we would interpret okay differently in the first instance and it is an unreasonable application your honor because ache sets forth a broad principle of fundamental due process primarily and then it applies that principle to the facts of the case the facts of that case were the state which was alleging future dangerousness and the state was using psychiatrists so applying the principle of ache to that particular case they said yes you were but that broad principle is what the courts holding was and so your position is that you're entitled to a psychiatrist and even if the state doesn't use one doesn't doesn't have any mental health not necessarily in every case your honor the state did require an ache some kind of threshold showing that you that those resources you're asking for are a necessary basic tool of your defense and that showing was made in this case so there's not a blanket rule that in every case because you feel like you want one you're entitled to that expert it's if those resources are a basic tool of your defense then the state is required to do that. It means that is the general practice as I understand it certainly in the federal courts and I believe in the state courts just from looking at the transcripts the defense often has does have access to psychiatrists to present mitigation evidence and if you had somebody with serious mental illness it seems quite extraordinary that that wouldn't be the case so are there other cases I mean I guess there are because I know there are a lot of cases in other circuits in which this issue has come up are they precisely parallel with regard to this the sentencing issue or what I mean there are other cases in which courts have found that ache does not present a requirement under AEDPA even if the central mitigation evidence depends on it on the psychiatric test. If I understood your question clearly. I'm sure it's not you I'm sure it's me but there are some out sort of outlying cases some outliers that do interpret ache in this very narrow sense that respondents ask you to interpret it here but the overwhelming majority of cases and we cited a lot of them in our brief just as examples the consequence of the mental retardation claim in a capital case. I wouldn't be entitled to a psychologist to test my client to see if he's mentally retarded. Essentially what you're doing is taking instead of cutting ache on a guilt penalty phase distinction you're just cutting it on the distinction of whether the there is a central defense A or B whether the prosecution has itself an animal or not.   It is a judgment of the psychiatric testimony and you see whether it's in the guilt phase or in the penalty phase doesn't matter that because the cut is essentially horizontal rather than vertical. Is that basically your argument? I think I'm agreeing with that, Your Honor. That if you can make that threshold showing that it's a basic tool of your defense, you are entitled to it. You cited a lot of cases, but they weren't in the AEDPA context. I was looking for a case in the AEDPA context where a court held it was unreasonable for the state court to interpret it in a more narrow framework, not the broad general principle. Do you have an AEDPA case, particularly in the Ninth Circuit or even any other circuit? Nothing is coming to mind, Your Honor, but I will look and file a supplemental authority. I didn't see that in your brief. I guess ultimately the real question is what does unreasonable mean in the AEDPA context? Because it doesn't mean illogical, like, or does it mean, I mean, in this instance it seems to me illogical to think that the cut is by guilt or, on the other hand, there's nothing to absolutely disprove it because the Supreme Court has not had the opportunity to consider it. So what does it mean, unreasonable? The Supreme Court has addressed it in this sense, not in the AEDPA context, but in this sense of explaining, in Williams v. Taylor and cases after that, sometimes we announce broad principles. And when we do, those can still be unreasonably interpreted. Lower courts might get a little more leeway. That doesn't solve the problem here because the real question is what's the broad principle? I don't think there's – you know, in Simmons v. South Carolina, the Court listed AIC along with Skipper v. South Carolina and Gardner v. Florida and Crane v. Kentucky saying these things are foundational due process principles sort of that our system is based on, and AIC is one of those cases. And I almost think the fact that the Supreme Court hasn't – you know, the other result of this narrow interpretation of AIC is that the U.S. Supreme Court would have to take pretty much every case, every different factual AIC scenario. Let me – can I just – your time is fine, but I just want to make sure I understand. What you wanted to show with this expert had to do with the effect of drugs in diminished capacity? Is that what it was? Not limited to that, Your Honor. What they requested, it was to investigate any and all mitigating circumstances. But the drug – the evidence of drug is the strongest factor, the strongest mitigating circumstance that they had evidence of at that time before they began that investigation. But you're not arguing that you get a sort of a carte blanche any time that you say we want an expert to investigate? That's right. That's not what they asked for. They specifically asked to investigate his family history, his history of drug addiction and his drug use at the time of the crime, his mental state at the time of the crime. That's what they were focusing on. A great deal of the reason why it was denied, as I recall, was because he had denied the drug use. So why isn't that a valid reason? He actually did not give a blanket denial of any drug use. He said he hadn't used it. He said she hadn't used it. She wasn't asking him for drugs. And he hadn't used it that day, I think he said. That's right. Mr. Bloom's testimony was confined at the first phase, as it appropriately should have been, because of how prejudicial that evidence would have been if it had been wide open. His testimony is confined to from Wednesday through Sunday morning of that week. And he said, I didn't give her drugs. I didn't see anyone give her drugs. I didn't tell Michelle Deloney that the two of us had used drugs together or that she came to the apartment looking for drugs. That was his testimony. There was a pretrial motion filed about a year or so earlier in which trial counsel alleged Mr. Williams denies a history of drug addiction. And I've talked to family members who know him well who say the same thing. As we all know, sometimes your investigation does not bear out what you initially think it will. But that was not Mr. Williams' testimony. In fact, as you know, at the mitigation hearing, it was a defense that presented very substantial evidence of a history of drug abuse. Okay. You've got about a minute left. I would like to reserve that last minute for rebuttal if I may. Thank you. Go ahead. May it please the Court. My name is Jeff Sack. I'm an Assistant Attorney General in the Arizona Attorney General's Office, and I represent respondents happily in this matter. With respect to the question of admissibility or what to do with the letters that Beverly Sweat wrote which led to the three names that the declarations came out in the District Court, I think this Court needs to consider those letters in determining the materiality of the Brady material that the District Court looked at. When you look at those letters and you compare them to the declarations that were given in District Court, you see inconsistencies with the stories that were given in the declaration or the version of events that were given in the declarations. For example, in the letters that Beverly Sweat wrote, she indicated that she had a conversation with Yolanda McCain, who indicated that she spoke with Patrick Fields, who told her that he killed Rita for $1,000 paid by Aaron. That never made it into the McCain declaration. But it should be considered when you look at the materiality of the evidence when deciding whether this is the case. And in order to do that, wouldn't there have to be an evidentiary hearing? I know the District Court did indicate it looked at the credibility of the three declarations. And I think reasonable people can disagree as to whether you can do that on paper. An evidentiary hearing would certainly be more fruitful for the Court to look at  And I don't believe that the ---- That's essentially what you're arguing. You're arguing that's because the letters were not fully consistent with the declarations. They could disregard that the declarations weren't material, but isn't the more likely, isn't another way to look at it, that if they'd had the letters, they would have found these witnesses. They, therefore, would have had an opportunity to put on the witnesses. And the question of whether that would have done them any good is really something that's very hard to tell without an evidentiary hearing now. Of course, it's now so many years later that it's not much use now either. But still, if you had these live bodies up there and somebody could ask her and say, did you say this thing about Patrick Fields? And she can say, well, no, that isn't what I said about Patrick Fields. And then you can make some judgment about whether to believe her. Yes, it is what I said about Patrick Fields or whatever. Certainly, I would agree that an evidentiary hearing would bear that out much more than a declaration on paper. I think what the district court did is it looked at the evidence that was presented in the declaration, compared it to the testimony of Michelle Deloney and the trial testimony as a whole. I understand that, but I don't understand why your first point then about the letter is worth anything at this point without an evidentiary hearing. I believe you can look at, as a whole, the suppressed evidence. And part of that suppressed evidence is going to be information that is in those letters. Well, when I look at the letters, together with the declarations, and inconsistencies and all, no matter how you cut it, it seems to indicate there's an alternative suspect. I mean, they found a suspicious person with this criminal history covered with blood in a location reasonably close to where the woman was murdered. And we do have cases more outside of the circuit, but some in the circuit, suggesting that alternative suspect evidence is really classic Brady material. Why shouldn't that be the case here? I think when you look at the inconsistencies with the suppressed evidence, you see that it doesn't really bear fruit for an alternative suspect. There is no indication that it is on the same day or around that time, other than Milton Barnett saying he recalls the next day hearing about Aaron Williams' murder. And that's not nothing. It's something. I mean, first of all, both of them say it's around then, I mean, in the same month anyway. And he said it was the next day I heard about this. And as we've already said, it's a very small town. So the information seems to have gotten around pretty fast. So there's not nothing. There's something. Again, if you put them on the stand, you'd know more about how much has stood up. Right. But there are other inconsistencies with those versions in the declaration. For example, I believe it was Milton Barnett or McKaney, I can't recall, one of them seeing him with a knife. There was no knife used in this particular murder. The fact that Patrick Fields has a history of abusing women or attacking women, those cases, from my reading of the record, indicated some sexual motive. There was no sexual assault in this case. But we don't know that there wasn't a sexual motive. We don't. But, I mean, if you look at what happened with the murder, it was simply a brutal beating, running over with a car. There was no sexual. Wasn't there a strangulation, though, and then that Mr. Fields was a strangler? There was some evidence to that effect. I'm sorry? That the murder victim was strangled and that there was evidence that that was part of Fields' MO with the women he attacked. With one, I believe. I'm not sure that that was a particular motive, but that is true. Dr. DeMaio came in at the penalty phase and testified that he saw some evidence of strangulation. But when you look at the evidence as a whole, there are those inconsistencies. And when you compare that to the testimony at trial with Deloney and testifying with respect to what Williams told her, and Williams told her not just one version but two that the jury heard. One version was that Williams told her that his friends had killed Rita and that he was there and he simply kicked her in the face. So if you want to believe these declarations or information in the letters, that would corroborate that version of what Williams told Deloney. So there is that. So you're saying it's not material because of these inconsistencies and it's not exculpatory because it shows that he's linked in, even if we took it at face value? If you look at the letters and the declarations and you believe those and you look at the trial testimony, it does not exculpate Williams. It inculpates him. Some of the information in the letters, for example, I believe Beverly Sweet said or Sweat, she said, I know Aaron was involved in this. Please contact me. The Patrick Fields telling Yolanda McKaney that he was paid $1,000 by Aaron Williams to murder Rita. So there isn't necessarily exculpatory evidence here. But as your opponent said, it would have been a different trial and a different theory. And who knows what the evidence would have been and how it would have come out. What do we do with that? What you have now are the three declarations and the letters. Would it have been a different trial? We could all speculate it could be. Would there have been impeaching evidence from Detective Solis the defense could have had? But the reason all we have is the three declarations and the letters is because the judge refused to hold an actual evidentiary hearing of the ordinary kind. And here, moreover, the State court did nothing with this. So there's no other record. In other words, this is as if you had a trial on a ordinary trial and said, I'm not going to have a trial. I'm just going to make you hand in declarations. In other words, this is a habeas which is a complete de novo proceeding. Yeah. As I understand it, there was no State. The State court didn't consider this claim. So we're not under it at all with respect to the Brady claim. With respect to the Brady claim, there was no State court hearing. Correct. And I agree with you, Judge Berzon. This is a different type of animal. It was a paper hearing. Would it have been better to have a paper hearing? It's a paper hearing which isn't simply trying to poke holes in anything that happened at trial or anything that happened in a State proceeding because there wasn't one. So it's a complete de novo, non-evidentiary hearing, which is a strange way to decide things under our legal system. I would agree with that. That's what the district court did. If this Court disagrees with that, you can certainly remand this to the district court for an evidentiary hearing on this Brady claim. I think that would be reasonable. But I think also the district court did correctly decide this particular issue based on the three declarations and the information that was presented in the letters. And found that it simply did not impeach anything that was testified to at trial and that there was no material evidence presented to perform a Brady claim. And I think you could affirm on that. But, again, if you disagree with that, an evidentiary hearing can be used. What about the fact that Patrick Field said he was in prison and he wasn't? Isn't that some indication that he had some reason to be covering up where he was? I think people could read it that way. I'm not sure. I think that would be somewhat special. But that's the question, right? Could people read it that way? Ultimately, in a Brady claim, it's whether there is – it is undermining the confidence in the verdict. And so the question isn't whether you read it that way or I read it that way. It's whether somebody could read it that way. Somebody could read it that way. The fact that he indicated he was in custody, it could be a lapse of memory. It could be hiding something. I mean, that's just – It could be he's crazy, which he seems to be, but nonetheless. Right. I would agree with you that people could read it that way. The district court didn't read it that way and simply looked at the declarations and the evidence in the letters and found that it wasn't material. But, again, if – What was your position with respect to an evidentiary hearing at trial or before the district court? I wasn't involved in the case at the time. I think the State's position was to have – I don't believe we objected to that particular procedure and simply took no position as to whether there would be an evidentiary hearing. There was a paper evidentiary hearing. There was an expansion of the record. But, you know, again, if this Court finds – I mean, since you did have the opportunity to go back to these same witnesses, presumably, and get counter declarations, and you didn't. My – I mean, not you. I mean, the State. My understanding at the time was there was some investigation that was done that wasn't fruitful. So that's an argument for just proceeding on the current record, because apparently you don't have contradictory information. I mean, you didn't come in with something from these people saying it wasn't that time or it was – or it could have been a different time or it was a different place or he didn't tell me this or anything like that. That's correct. There was no information given that would – anything contradictory to what was in the declarations. So how can we possibly then, since that's the proceeding that was set up and you had the chance to counter it, we certainly couldn't proceed now on the basis that there is something not credible about those declarations? In other words, whether or not we go the evidentiary route to do what you want us to do, which is just say that there was so much contradiction that it's not material, just doesn't seem plausible since you had the opportunity to introduce directly contradictory evidence and didn't. Right. But you can look at the declarations themselves, as a district court did, and make that determination. Or, in the alternative, you could send it back for an evidentiary hearing where these people could testify. And it would not only be the three declarations that the district court had. You would have testimony from, hopefully, Beverly Sweet or Sweatt and any other individual. Was Solis – did anybody ever try to depose Solis? Not that I'm aware of. And you put no evidence in from him in terms of what he investigated or anything like that? No. The only evidence that – well, the only – I don't even know if it was evidence, but the only information was that when we found the letters and disclosed them in 1997 while the State court proceedings were going on, the only information was that Detective Solis and the trial prosecutor don't – But even that wasn't under oath or anything, right? No, it wasn't. But there was no – there was no proceeding in State court. Nothing was done with those letters in State court. But you never came in with a declaration from either the prosecutor or Solis saying that I didn't see these letters? No. It was simply – I mean, frankly, it's not credible. It is really not. That's – if you want something that's not credible, that's not credible. The letters were written to him, and there were six or seven of them. And the notion that they all went into the garbage seems really unlikely. Well, we know they didn't go to the garbage, but, yeah, I understand what you're  saying. Right. Yeah. They went into a dark corner. Right. Well, they were found – They seem to be – not only are they addressed to him, they make reference to a conversation about you told me you'd help me if I helped you and on like that. So – They did. Mm-hmm. I can't disagree with that. I mean, that's what the letters say. So – but they were given – you know, once they were found, they were disclosed, and they were disclosed to Mr. Williams' post-conviction counsel, who did not do anything with them, as far as I know, in the state court proceedings. If I – if you have no further questions on the Brady claim, I can talk about the Eighth claim at this time. My – the state's position is that there was no threshold showing by Mr. Williams to give the funding for an expert at sentencing. What defense counsel did was file a motion under Rule 26.5 of the Arizona Rules of Criminal Procedure for a mental health examination after conviction. In that motion, he indicates he wants to present evidence regarding the drug abuse or cocaine abuse that Mr. Williams had based on Michelle Deloney's testimony. Michelle Deloney's testimony at trial was that he had been doing cocaine, but there was never any evidence presented that he had been doing cocaine on the actual day of the murder, or no evidence indicating that he had been under the effects of any cocaine or drugs at the time of the murder. Oh, but she said every day. Well, she said every day at the sentencing. Right. Right. Which that motion was filed prior to the sentencing. But it was renewed after she said it. It was renewed. So – No evidence that it was on that day. No evidence that he was under the effects of cocaine on that day. And in fact, Williams had denied during trial and never said at sentencing that he was under the effects of cocaine. And that's the type of evidence that he – But that seems to have been the biggest influence on the trial judge and on the district judge here. And I would like you to explain to me what the relevance is. Relevance of? Of the fact that he denied. The relevance is that that is a type of evidence that he can competently testify to. For example, this isn't a case where you have some type of mental health, like post-traumatic stress disorder or schizoaffective disorder, where you would need an expert to explain how that affects someone during the time of the crime. This was evidence that Williams himself possessed and could discuss with respect to the effects. But there was – he chose, perhaps unwisely, to take that view at the guilt phase. But the jury obviously didn't believe his overall story, so it's quite possible they didn't believe that either. And then Deloney comes in and gives a very specific story about his drug use. And why – what's the difference, what he said? There was a fair amount of evidence, at least by that point, that he was a serious drug user around the time of the trial – of the murder, I'm sorry. Right. But there was no specific evidence that at the time, around the time of these murders, that he was under the effect of cocaine use. But she essentially said he was using it every day. He completely changed his personality in general. Presumably, being a cocaine addict has other impacts in terms of the need to get drugs and, I mean, just addictive behavior. And plus, there's also the fact that it's quite clear that for mitigation purposes, this doesn't have to be at the time of the offense. So why wasn't that good enough? Because it made no threshold showing that it affected his mental state at the time of the murder. But isn't the state – the clear Supreme Court law that it doesn't have to, for mitigation purposes? For mitigation purposes, well, in Arizona, non-statutory or statutory mitigation, it would have to somehow affect him, his mental state at the time, to be relevant mitigation. I thought that's unconstitutional. But that actually concerned me. I guess I was calling that like the Lockett-Eddings issue, which I know is uncertified but not procedurally barred. The state court said something to the effect that without a showing of some drug use cannot be a mitigating circumstance of any kind. But Eddings said that it's an error for the court to preclude the sentencer from considering relevant mitigating evidence as a matter of law. And that sounded to me like an as a matter of law type statement. Why isn't that an unreasonable application of Lockett-Eddings? Because Eddings and Lockett say that you have to consider mitigation, any mitigation. Any mitigation that a defendant wants to present, the court has to consider it. And in this case, the court did consider it. Now, there's no ---- But the statement that says drug use cannot be a mitigating circumstance of any kind unless there's some impairment at the time of the offense, that sounds like, no, we can't consider this evidence unless there's some evidence that it related to the actual time of the offense, impairment at the time of the offense. Why isn't that? That statement, the way I read that statement, is that if there is ---- that it goes to the weight. But you just said the opposite. You just stood up and said that the reason why my suggested approach doesn't work is because under Arizona law, if it's not relevant to the time of the offense, it doesn't matter. That's what you just said. No. It goes to the weight of the offense. In Arizona, after Eddings or after ---- Well, if the weight's zero, then we're in the same place, whether you say the weight is zero or they're not considering it. Right. But there's no constitutional ---- there's no constitutional principle indicating or telling a court that it has to give weight to mitigation. The only thing it has to do is consider it. So you're saying that Arizona could have a rule that the weight to which any evidence that doesn't go to the time of the crime is entitled to is zero, and that is not equivalent  No. You have to consider the mitigation. But the State court, and I read some of the other opinions, and this is the Arizona Supreme Court, seems to say what Judge Bresson was saying, which is as a matter of law, this is our rule, Supreme Court of Arizona, there is zero, it's not relevant, it's zero weight if it doesn't relate to the time of the offense. If there's no causal type nexus to the crime itself, it's not given weight. It can ---- As a matter of law. As a matter of Arizona law. The court can give it weight, but it depends on what weight it wants to give it. But what it can't do is simply preclude it. How could a State court in Arizona, a court of appeal or a trial court, give it any weight if it's not related to the time of the offense in light of what the Supreme Court said in this very case in Williams? Well, if I could give a little history of Arizona after Lockett. Lockett dealt with an Ohio statute that precluded certain mitigation. It said you can only present these factors as mitigating evidence. So it precluded a whole slew of mitigating factors. At the time, Arizona had the same statute. After Lockett came out, about 17 days after Lockett came out, Arizona changed its statute. Well, it didn't change its statute. The Arizona Supreme Court decided State v. Watson and found Arizona's statute unconstitutional under Lockett. After that, the court indicated that you have to consider any mitigation that a defendant wants to present. You cannot preclude the defendant from presenting anything about his background, his social history, his mental state, things like that. What the court has done is saying, well, you can't preclude it, but you can give it whatever weight you want. But that doesn't... That weight... The sentence that Judge Akud is reading doesn't say whatever weight you want. It says zero weight as a matter of law. If there is no connection between, like, for example, I'm trying to think of a good example to give you. If a person has a diagnosis of post-traumatic stress disorder, but there is absolutely no evidence and you have two experts or multiple experts who say that at the time, the whole month prior to and at the time of the murder, he was not under any, you know, disassociative state or under... But that's zero weight. So if, so for example, if you had evidence that he had a history of schizophrenia, but was medicated at that time in a way that it wasn't affecting him, you'd say that's zero weight. And my understanding of the constitutional law is that it isn't, that the jury could take or the, in this case, the judge could take into account as a mitigating factor as to whether the person gets a death penalty that he has suffered a mental illness his whole life, even if it wasn't active at the time of the crime. The court has to consider it. But what weight to be given, whether it's zero weight or a little weight or de minimis weight, under Harris v. Alabama, the Supreme Court has said that trial courts or jury sentencing, they can do that. They don't have to give any constitutional... I'm getting mixed up here about having trouble with the apples and the oranges. The AIC claim, which is what we started out with... Right. ...is a claim that they didn't have the mitigating evidence, but they wanted an expert in order to develop it. So there is another claim that has to do with the drug, what's the other? There's another one that is different from the... The mitigation. The mitigation claim. The blockading. Blockading, which is a separate claim. A separate claim. And so I just wanted to make sure that we kind of... And I believe that claim actually was procedurally defaulted. But your argument, the reason we got into this, is because your argument about why she didn't make a sufficient showing under AIC is because this isn't relevant evidence, essentially. Even if it so that's how we got into this. Well, I... She didn't make an adequate showing. She didn't make an adequate showing because she wasn't entitled to introduce this because it wasn't pertinent under Arizona law. There was no adequate showing because there was no... Under AIC, which is separate than Eddings and Lockett, under AIC you have to make a showing that your mental state is a significant factor. All right. Let me ask you a question, then. You seem to have therefore let go of the notion that, as we were talking before with the vertical and the horizontal interpretations of AIC, that AIC would not require... Well, you seem to be agreeing at this point that AIC, if there were a substantial showing... Let's take my schizophrenia example. If somebody came in and said, this person has a history of schizophrenia and I want to put that on as mitigating evidence and I need a psychiatrist to do it, that you are not arguing that AIC does not constitutionally require the psychiatrist in that circumstance? In a penalty case? I think you could read AIC narrowly. I think there are cases, other circuits, that have read AIC very narrowly, the Sixth Circuit and the Fifth Circuit, which I believe those cases were cited by the district court. I know this court in a pre-EDPA case has read AIC to apply at sentencing in a capital case. Do I – I'm not taking the position that AIC requires that because... Well, does AIC allow it for EDPA purposes? And the question is, is it unreasonable for this AIC court to interpret it in a narrow fashion? No, I don't believe it is unreasonable to interpret it in a narrow fashion. Tell me then why it's – assuming that reasonable means something like logical, something a person with a logical mind could believe, why would a logical person think that the AIC rule applies in a guilt phase the way you've been trying to apply it, i.e., there has to be some threshold showing, but that same rule doesn't apply to a defense, i.e., to mitigation in the penalty phase? What's logical about that? It's a philosophical question, in a sense. You can – when you read – under EDPA, you have clearly established federal law, and AIC clearly establishes that if the defense presents his mental state or sanity as a defense, and it's a significant factor that he is entitled to a psychiatrist, or when the State presents psychiatric evidence to show future dangerousness, he's entitled to – But that's stating the rule the way I would read the rule, and it therefore makes no distinction between the guilt phase and the penalty phase. You could certainly read it that way, but when you look at AIC, it was in the guilt phase, so you could read it narrowly that way. But I think in the sense that AIC is read narrowly, even if you wanted to expand AIC into the sentencing of a capital case, you still have to have a mental state that is a significant factor in the case that is presented. And in this case, he did not present a significant factor. He, at every stage, denied that. Even prior to sentencing, he denied it.  But it may be well taken until after Michelle Deloney testified. And at that point, it was renewed, the request. I would disagree with that. I think her testimony indicated that – did expand on the testimony at trial to the fact that he had been doing crack cocaine on a daily basis. When you look at her testimony – And that his whole personality had changed and that he had become a violent person when he was a nonviolent person and so on. But if you read her testimony as a whole, and towards the end of her testimony, she's asked, well, did this crack cocaine, when he started using it, did it make him a violent person from before? And she said no. He was a violent person before that. So there is – it does cut both ways. Yes, she did testify that he had a personality change. I believe she even testified to that in trial. I may be mistaken on that, but I recall it being a theme. But, again, I don't think that is a significant factor for a threshold showing to get funding for a psychiatric expert on this particular mitigation that he wanted to present. I know you're a bachelor and out of time. And of the uncertified questions, the one that really troubles me is the jury territory. It seems to me that if that one was before – properly before the court, it would be an automatic reversal or a grant, or at least an evidentiary hearing, which if upheld would be a grant. So what is the – if you could just go over briefly to me your arguments about why there is a procedural bar as to that or a non-exhaustion as to that issue. Well, I'm not really recalling that one right now because it was a procedural. I believe – I know you briefed it. We'll have to go over that. Yeah. I believe we briefed why it was procedurally defaulted. And we briefed, I believe, very briefly the merits of that. So I would simply rely on that. If the Court has no further questions. Thank you. Thank you. The Tenth Circuit in Scott v. Mullen laid out what the proper inquiry is in resolving a Brady claim. And when this Court looks at that claim, it's not going to assess the credibility of Michelle Deloney v. Yolanda McKinney and Milton Barnett. It's not going to decide whether Patrick Fields is more guilty than Aaron Williams. What the Court is simply going to decide is, as the United States Supreme Court said, in Cohn v. Bell, does the evidence that was withheld lend support to, in our case, the possibility that a third party was responsible for this murder? Does it lend support to the defense that they either could have presented or, in this case, the defense they tried to present? And, of course, it does. I don't recall which judge asked about a motion for a deposition of Detective Solis. We did move for that deposition in the district court. The Court denied it, saying, look, nobody's disputing the State was in possession of these letters, so it doesn't really matter at this point what Detective Solis says. But that isn't the only issue with Request to Solis. It's also whether he ever investigated any of this. That's right, Your Honor. And that was the district court's basis for denying it. We still felt like the deposition would have been appropriate, but we didn't. We weren't granted that. As to the Ake claim, Ake was also a sentencing case. That's why the Court considered future dangerousness in psychiatric testimony. So it was not just a first-phase case. And I think the Respondent's argument regarding the Lockett and Eddings claim, Abdul Kabir, the Supreme Court, the recent Supreme Court case, is particularly instructive. They specifically say, we're not talking in Lockett and Eddings and all these cases about admissibility, about this someone saying you can't even hear this evidence. We're talking about giving it meaningful consideration. And the Constitution does require that as well. All right. So that answers the question of the zero weight. Your time has expired. Thank you very much, Your Honor. Thank you, counsel. The Court appreciates the argument presented by both sides in this matter. The matter just argued is submitted for decision. The Court stands adjourned. All rise. Thank you.
judges: Schroeder, Berzon, Ikuta